UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MORSIE PORTER                                    CIVIL ACTION

VERSUS                                           NO. 08-3612

ERIK K. SHINESKI,                                MAG. JUDGE WILKINSON
SECRETARY, DEPARTMENT
OF VETERANS AFFAIRS ET AL.

**ORDER AND REASONS ON MOTION**

Plaintiff, Morsie Porter, filed this pro se action alleging that his former employer,

Erik K. Shineski, Secretary of the United States Department of Veterans Affairs ("the

Secretary"),[1] violated Title VII by retaliating against him because he had previously filed

several Equal Employment Opportunity ("E.E.O.") complaints. 43 U.S.C. § 2000e-16.

Porter also brings claims arising out of the same events under 42 U.S.C. § 1981, 42

U.S.C. § 1983, 42 U.S.C. § 1985, the Louisiana Constitution and Louisiana tort law.

The Secretary filed a motion to dismiss and/or alternatively for summary

judgment, supported by sworn and certified exhibits from the agency's E.E.O.

investigation of plaintiff's retaliation complaint, the final agency decision and plaintiff's

appeal to the United States Equal Employment Opportunity Commission ("E.E.O.C.").

---

[1]The court granted defendant's motion to substitute Shineski as a named defendant in place of
the previous Secretary. Record Doc. No. 22. Plaintiff voluntarily dismissed the other named defendant,
Larry Thomas. Record Doc. No. 19.

Record Doc. No. 24. The motion also included two news articles as exhibits. Defendant's Exhs. A, B. "Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." James v. Texas Collin County, 535 F.3d 365, 374 (5th Cir. 2008). Therefore, I have not considered these two exhibits.

Porter filed a timely opposition memorandum. Despite the court's order directing him that "his written response should include sworn affidavits and/or other verified materials sufficient to show that there is a material fact dispute precluding dismissal of his case," Record Doc. No. 25 (emphasis added), plaintiff's opposition includes only uncertified, unsworn exhibits, some of which are incomplete, unsigned and/or undated. Record Doc. No. 26. I have reviewed all of the exhibits that he proffered.

Plaintiff's only relevant exhibits are copies of a portion of the investigative report and the final agency decision concerning his E.E.O. complaint at issue in this case. Because defendant submitted certified versions of the same documents, the court has considered them. Porter also unnecessarily submitted a copy of a federal statute. Statutes are not evidence.

All of plaintiff's other exhibits either reflect undisputed facts already in evidence in the certified administrative record (such as the dates and circumstances surrounding his Leave Without Pay and the subsequent approval of his disability retirement), or are

irrelevant to this case. Porter submitted numerous irrelevant, hearsay documents related to an E.E.O. complaint filed by another person in 2004, more than two years before his own E.E.O. complaint that led to the instant lawsuit. Thus, even if all of plaintiff's exhibits were sworn and verified, they would not change the outcome of this decision.

Defendant received leave to file a reply memorandum. Record Doc. Nos. 27, 28, 29.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. **IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.    THE UNDISPUTED FACTS

The following facts are drawn from the certified administrative file attached to defendant's motion and are undisputed, solely for purposes of the pending motion for summary judgment.

Porter, an African-American male, had worked for the Department of Veterans Affairs (the "V.A.") as a Housekeeping Aid at the V.A. Medical Center in New Orleans for six years at the time of the relevant events. In June and July 2006, Porter was on extended Leave Without Pay, awaiting a decision from the Office of Personnel Management on his application for medical disability retirement as a result of severe job

stress, anxiety and depression. Porter's application for disability retirement was approved in April 2007. Record Doc. No. 24-8 at p. 20, letter from John M. Boutté, Ph.D., dated May 4, 2006; Record Doc. No. 24-9 at pp. 27, 29, testimony of William C. Insley, Chief of Human Resources Management (pp. 4, 11 of transcript of testimony).

Leave Without Pay is a temporary, unpaid, approved absence from duty. The grant of Leave Without Pay is a matter of administrative discretion. Record Doc. No. 24-8 at p. 46, Leave Administration Memorandum dated May 20, 2004, ¶ 8.

On May 22, 2006, the Secretary ordered all V.A. employees to complete their annual computer security training by June 30, 2006. Record Doc. No. 24-8 at p. 9, "Memorandum to All VA Employees" from R. James Nicholson dated May 22, 2006. The Secretary's directive was communicated to the V.A. Medical Center in New Orleans the next day. Record Doc. No. 24-9 at p. 36, memorandum to Medical Center Director dated May 23, 2006.

Loree Doyle was the Coordinator of Workforce Development for the Nurse Executive Corporate Function, which administers all global training for the V.A. Medical Center employees. She received the Secretary's directive and was responsible for implementing it. The only employees who were exempt from the expedited, mandatory training were those who were deployed in active military service or were "unavailable

because of a documented medical condition." Record Doc. No. 24-9 at p. 33, testimony of Loree Doyle (pp. 5-8 of testimony transcript).

Todd Donehoo, the Acting Facilities Management Director of the New Orleans V.A. Medical Center, received from Doyle the Secretary's directive and a list of all employees who were required to complete the mandatory training. He instructed his supervisory team to contact all employees on the list and ensure that they completed the training within the stipulated time frame. Neither he nor his supervisory team received any information concerning, and he had no knowledge of, the leave or pay status of the employees on the list. Donehoo understood that all employees on the list were required to complete the training. At that time, in the aftermath of Hurricane Katrina and the accompanying levee breaches that devastated New Orleans, human resources personnel in New Orleans were short-staffed and overwhelmed, and there was considerable confusion concerning who was actually assigned to the New Orleans V.A. Medical Center. Record Doc. No. 24-8 at pp. 2-4, affidavit of Todd Donehoo dated January 9, 2007, ¶¶ 8, 12, 16; Record Doc. No. 24-9 at pp. 25-26, testimony of Todd Donehoo on April 17, 2007 (pp. 6-10 of testimony transcript).

Plaintiff's supervisor, Larry Thomas, received the directive, along with a list of all employees who were expected to take the training, from Donehoo. Thomas contacted

Porter and told him he must take the training. Porter completed the training, which took about two hours, on July 7, 2006. He was not paid for his time.

When the Secretary's directive was issued, some employees of the V.A. Medical Center in New Orleans were still on Temporary Assignment of Duty in other parts of the United States in the aftermath of Hurricane Katrina. Thomas did not know that Porter was on Leave Without Pay when, at the instruction of Donehoo and Doyle, Thomas directed all of his subordinate employees to take the training. The list of employees he used to contact these employees did not indicate the leave status of any employee, but included all employees of the V.A. Medical Center who were not then on duty at the New Orleans V.A. Medical Center. Record Doc. No. 24-7 at p. 75, affidavit of Larry Thomas dated December 8, 2006, ¶¶ 9, 10, 12; Record Doc. No. 24-9 at p. 21, testimony of Larry Thomas on April 17, 2007 (pp. 6-8 of testimony transcript).

A female employee of the V.A. Medical Center in New Orleans was still on a post-Katrina Temporary Assignment of Duty to the V.A. Medical Center in Dallas, Texas, and was also on Leave Without Pay when the Secretary's directive was issued. Thomas required her to report to the V.A. Medical Center in Dallas and take the computer security training there without being paid for her time. The only employee of the V.A. Medical Center in New Orleans who was exempted from the mandatory training was a man who was hospitalized with a traumatic brain injury. Record Doc. No. 24-9 at pp. 21-

22, Thomas testimony (pp. 7, 9-10 of testimony transcript); Record Doc. No. 24-9 at p. 30, Insley testimony (p. 15 of testimony transcript).

Porter contacted an E.E.O. counselor on August 3, 2006. He charged that Thomas had retaliated against him for engaging in prior E.E.O. activity by requiring him to attend the computer training when he was on Leave Without Pay based on a pending medical disability application. Before the date of the allegedly retaliatory action in the instant case, plaintiff had filed thirteen previous E.E.O. complaints.

On September 8, 2006, Porter filed a formal complaint of reprisal, which was accepted and investigated by the V.A. As part of the investigation and proposed solution, plaintiff's supervisors offered to pay him retroactively for the time he spent at the training.

On June 13, 2007, the V.A. issued a Final Agency Decision, finding that Porter had failed to prove retaliation. Record Doc. No. 24-10. He appealed to the E.E.O.C. Office of Federal Operations, which affirmed the agency decision on December 19, 2007. Record Doc. No. 24-11. Plaintiff's request for reconsideration was denied and he was notified of his right to bring a civil action by letter dated February 28, 2008. Record Doc. No. 24-12.

II.    ANALYSIS

   A.    Defendant's Motion to Dismiss Is Granted In Part

       Plaintiff's complaint in this court contains no factual allegations, except to state

that Thomas discriminated against him on account of reprisal and that Porter filed a

complaint with the E.E.O.C. on August 3, 2006.  Porter's complaint alleges vaguely that

he was subjected to reprisal during the course and scope of his employment for assisting

other employees with E.E.O. complaints and for filing his own E.E.O. claims, and that

the Secretary established customs, policies and practices that deprived him of his right

to be free from discrimination and retaliation.  Record Doc. No. 1, ¶¶ 13, 14, 19.  Porter

attached to his complaint in this court a copy of the E.E.O.C.'s February 28, 2008 letter

denying reconsideration of his appeal of his claim filed on August 3, 2006.

       The Secretary argues that all of Porter's claims, other than his Title VII retaliation

claim based on his August 3, 2006, E.E.O. complaint, should be dismissed for failure to

exhaust administrative remedies and/or for lack of subject matter jurisdiction.  Defendant

also argues that plaintiff's Title VII retaliation claim should be dismissed for failure to

state a claim because he cannot establish a prima facie case.

       Title VII requires a federal employee to exhaust administrative remedies by filing

a charge of discrimination with his agency before he can file a civil action.  Pacheco v.

Mineta, 448 F.3d 783, 787-88 (5th Cir. 2006) (citing 42 U.S.C. § 2000e-16(c); 29 C.F.R.

§ 1614.105 - 107 (2005); <u>Brown v. General Servs. Admin.</u>, 425 U.S. 820, 835 (1976);

<u>Martinez v. Department of United States Army</u>, 317 F.3d 511 (5th Cir. 2003)).

Porter neither alleged in his complaint nor provided any evidence to show that he filed an E.E.O. charge concerning any events other than the single incident of alleged retaliation on July 7, 2006.  Thus, he has exhausted his administrative remedies only as to that incident, and his complaint in this court is limited to that charge of reprisal. Furthermore, the time limit to exhaust his remedies as to any other allegations arising from that time period expired long ago.  <u>See</u> 29 C. F. R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.").  Accordingly, defendant's motion to dismiss is granted in part and plaintiff's complaint is dismissed with prejudice to the extent that it alleges any other claim under Title VII.

As to subject matter jurisdiction over plaintiff's non-Title VII claims, it is axiomatic that this court is one of limited jurisdiction and must always be satisfied of its own subject matter jurisdiction before proceeding in any cause.  <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.")).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

Porter asserts claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Louisiana Constitution and Louisiana tort law.  However, "[i]t is well established that '[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees.'" Smith v. Harvey, 265 Fed. Appx. 197, 2008 WL 344747, at *2 (5th Cir. 2008) (quoting Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996) (citing Brown, 425 U.S. at 835 (1976); Rowe v. Sullivan, 967 F.2d 186, 189-90 (5th Cir. 1992); Hampton v. Internal Revenue Serv., 913 F.2d 180, 182-83 (5th Cir. 1990)).  In Smith, the Fifth Circuit affirmed this court's dismissal of a federal employee's claims against his employer under Section 1981 and Louisiana tort law.

The Fifth Circuit has repeatedly held that a federal employee's causes of action against his employer based on any theory other than Title VII, such as those alleged by Porter in this case, must be dismissed.  See Williams v. Gonzales, No. 104CV342, 2005 WL 3447885, at *7-8 (E.D. Tex. Dec. 14, 2005) (citing Pfau v. Reed, 125 F.3d 927, 932

(5th Cir. 1997), judgment vacated on other grounds, 525 U.S. 801 (1998) (federal employee's claim for intentional infliction of emotional distress is preempted by Title VII); Perez v. Federal Bureau of Investigation, 71 F.3d 513, 515 (5th Cir. 1995) (same as to federal employee's claims brought under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 396 (1971)); Rowe, 967 F.2d at 189 (same as to federal employee's claims of race discrimination under Sections 1981, 1983 and 1985(3)); Watkins v. Lujan, 922 F.2d 261, 263 (5th Cir. 1991) (same as to federal employee's claim of race discrimination under Section 1981); Hampton, 913 F.2d at 182-83 (same as to federal employee's claim of intentional infliction of emotional distress)).

"The Fifth Circuit has interpreted the Supreme Court's mandate in Brown to mean that, when a complainant against a federal employer relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is not sufficiently distinct to avoid preemption." Id. at *8 (quotation omitted) (citing Pfau, 125 F.3d at 932; Rowe, 967 F.2d at 189)).

In the instant case, Porter fails to articulate any factual distinction between the basis for his Title VII claim and his claims under 42 U.S.C. §§ 1981, 1983 and 1985, the Louisiana Constitution and Louisiana tort law.  Because Porter's allegations of "'constitutional violations [and violations of state law] arise out of the same facts as his employment discrimination claims, . . . they are preempted by Title VII and cannot afford

an independent ground for relief.'" Id. (quoting Jackson, 99 F.3d at 716). Accordingly, defendant's motion to dismiss is granted as to plaintiff's non-Title VII causes of action and the claims are dismissed with prejudice.

The Secretary also argues that plaintiff's Title VII retaliation claim should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). However, because defendant relies on evidence outside the pleadings for this argument, Fed. R. Civ. P. 12(d) requires that it be considered as a motion for summary judgment under Fed. R. Civ. P. 56, rather than as a motion to dismiss. Accordingly, the Secretary's motion to dismiss is denied in part as to plaintiff's Title VII retaliation claim.

I therefore consider the Secretary's alternative motion for summary judgment on plaintiff's retaliation claim.

B.      Standard of Review for Summary Judgment Motions

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States,

452 F.3d 428, 430 (5th Cir. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)); <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 431 (5th Cir. 1998) (citing <u>Celotex</u>, 477 U.S. at 323).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323; <u>accord</u> <u>Capitol Indem. Corp.</u>, 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." <u>Edwards</u>, 148 F.3d at 432. "'We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'" <u>Badon v. R J R Nabisco Inc.</u>, 224 F.3d 382, 394 (5th Cir. 2000) (quoting <u>Little v. Liquid Air Corp.</u>,

37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint.""" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

C.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation

In a Title VII case, plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of retaliation. To establish a prima facie case of retaliation, Porter "must show (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." Drake v. Nicholson, No. 07-60855, 2009 WL 1043810, at *3 (5th Cir. Apr. 20, 2009) (citing Holloway v. Department of Veterans Affairs, 309 Fed. Appx. 816, 2009 WL 270175, at *2 (5th Cir. 2009); LeMaire v. Louisiana, 480 F.3d 383, 388 (5th Cir. 2007)).

If Porter can establish a prima facie case, the Secretary "will have an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action. Finally, the burden falls on [plaintiff] to show that [defendant's] explanation is a pretext for unlawful retaliation." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (citing Long v. Eastfield College, 88 F.3d 300, 304-05 (5th Cir. 1996)).

It is undisputed that Porter filed multiple E.E.O. complaints before the incident at issue here and that he satisfies the first prong of his prima facie case. However, the Secretary argues that plaintiff cannot establish the second or third prong.

Defendant's argument that Porter cannot establish the second prong of his prima facie case focuses on the provision of Title VII that gives federal employees a cause of action for retaliation. Their cause of action arises out of 42 U.S.C. § 2000e-16(a),[2] which has different language than the provision of Title VII that gives private sector employees a cause of action for retaliation. Id. § 2000e-3(a).[3] The Secretary argues that the decision

---

[2]"All personnel actions affecting employees or applicants for employment . . . in military departments . . . , in executive agencies . . . , in the United States Postal Service and the Postal Regulatory Commission, . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Id. (emphasis added).

[3]
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Id.

of the United States Supreme Court in <u>Burlington No. & Santa Fe Ry. v. White</u>, 548 U.S. 53 (2006), which addressed the second prong standard, applies <u>only</u> to private sector employees, and <u>not</u> to federal government employees, because of the different language in the two provisions of Title VII applicable to those two groups.

The Supreme Court in <u>Burlington Northern</u> resolved a circuit split and clarified the standard for bringing a retaliation claim under Section 2000e-3(a), the private sector provision of Title VII. The Court held that the term "adverse employment action," which both private and federal employees must establish as the second prong of their prima facie case, "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. . . . [T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 68.

In <u>Burlington Northern</u>, the Supreme Court overruled the Fifth Circuit's stricter standard for "adverse employment action" in a private sector case, <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702 (5th Cir. 1997). <u>Mattern</u> held that an employee who alleges unlawful retaliation must demonstrate an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, and compensating," to satisfy the second prong of a prima facie case. <u>Id.</u> at 707.

The Fifth Circuit in <u>Mattern</u> had imported that standard from an earlier, <u>government</u> sector case, <u>Dollis v. Rubin</u>, 77 F.3d 777 (5th Cir. 1995). However, the Supreme Court in <u>Burlington Northern</u> did not mention <u>Dollis</u>. Thus, the Secretary contends that the stricter "ultimate employment decision" standard of <u>Dollis</u> survives <u>Burlington Northern</u> and continues to apply to federal government employees, such as Porter, despite the Supreme Court's overruling of <u>Mattern</u> and even though the Supreme Court did not mention or distinguish between private sector and federal employees in its decision.

The United States Attorney previously made the same arguments before me in <u>Smith v. Harvey</u>, No. 06-953, 2007 WL 625826 (E.D. La. Feb. 27, 2007), <u>aff'd</u>, 265 Fed. Appx. 197, 2008 WL 344747, at *2 (5th Cir. 2008), in which I granted the Secretary of the Army's motion for summary judgment on the plaintiff employee's retaliation claim. In affirming my decision, the Fifth Circuit agreed with me that it was unnecessary to decide whether the <u>Burlington Northern</u> standard applied "because Smith has failed to produce evidence of an adverse employment action under either standard: Smith does not allege that he suffered an ultimate employment decision, and the incidents he describes would not have dissuaded a reasonable employee from pursuing a discrimination claim." <u>Smith</u>, 2008 WL 344747, at *3. This is the only Fifth Circuit case my research has located that addresses specifically whether the <u>Burlington Northern</u>

standard applies to federal employees and, as stated, the Fifth Circuit declined to decide the issue.

At least three other unpublished Fifth Circuit cases since Burlington Northern have applied its standard to the retaliation claims of federal employees without mentioning whether a different standard might apply to federal employees. In Drake, the Fifth Circuit held that the district court "erroneously relied on Dollis" because the Supreme Court in Burlington Northern, three months before the lower court's decision, had "rejected this Circuit's decisions limiting actionable retaliation to so-called 'ultimate employment decisions.' Our cases after Burlington make clear that an adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Drake, 2009 WL 1043810, at *3 (citing McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007)); accord Holloway, 2009 WL 270175, at *3 (citing Jones v. Johanns, 264 Fed. Appx. 463, 2007 WL 2694017, at *5-6 (6th Cir. 2007); Roldan v. Chertoff, No. 04CV2515, 2006 WL 4632503, at *8-12 (S.D. Cal. Oct. 19, 2006)); Peace v. Harvey, No. 06-50402, 2006 WL 3068677, at *1-2 (5th Cir. Oct. 26, 2006); Hale v. Napolitano, No. SA -08-CV-106-XR, 2009 WL 1507144, at *4 (W.D. Tex. May 28, 2009) (citing Holloway, 2009 WL 270175, at *3; Smith, 2008 WL 344747, at *3; Jones, 2007 WL 2694017, at *5-6; Roldan, 2006 WL 4632503, at *12).

These cases represent, if not binding precedents, at least a trend among the federal courts to apply <u>Burlington Northern</u>'s standard to federal employees. Nonetheless, I need not decide in this case whether the "ultimate employment decision" standard of <u>Dollis</u> or the "materially adverse" standard of <u>Burlington Northern</u> applies to Porter's prima facie case.

Porter alleges that defendant retaliated against him by requiring him to take two hours of computer security training while he was on Leave Without Pay and not paying him for his time.[4]  This employment action presents an odd situation:  it arguably meets the strict <u>Dollis</u> standard of an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, and compensating," because it involved a temporary withdrawal of leave and a failure to compensate Porter for two hours of work, yet it would not satisfy the more lenient <u>Burlington Northern</u> standard.  Defendant's recall of Porter from his Leave Without Pay for two hours of training, which all employees were required to complete and which plaintiff was able to complete despite his leave status awaiting a disability determination, and defendant's failure to pay him for the two hours of time were not so harmful that the actions could well dissuade a reasonable worker

---

[4]It is not clear from plaintiff's pleadings whether he still complains of the non-payment.  During the investigation and attempted resolution phase of his E.E.O. complaint, Thomas and Donehoo offered to pay Porter retroactively for his time.  It is not clear whether plaintiff ever accepted this offer.  I assume for purposes of the instant motion for summary judgment that he was not paid.

from making or supporting a charge of discrimination. "Importantly, in <u>Burlington Northern</u> the Court stressed: 'We speak of <u>material</u> adversity because . . . it is important to separate significant from trivial harms,' and noted an 'employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work.'" <u>Peace</u>, 2006 WL 3068677, at *2. The incidents of which Porter complains are "so 'trivial' as to fail the <u>Burlington Northern</u> standard." <u>Id.</u>

Thus, if I apply the <u>Dollis</u> standard, as defendant argues I should, I would find that plaintiff <u>can</u> establish the second prong of his prima facie case, which is not the outcome that defendant seeks. On the other hand, if I apply the <u>Burlington Northern</u> standard, which defendant argues is incorrect, I would find that plaintiff <u>cannot</u> establish the second prong of his prima facie case, a result that is paradoxically favorable to defendant. Therefore, without deciding whether <u>Dollis</u> or <u>Burlington Northern</u> supplies the correct standard, I will assume for the sake of argument that Porter could establish the second prong of his prima facie case.

The Secretary also argues that plaintiff cannot establish the third prong of his prima facie case, which requires a showing of a causal link between his prior E.E.O. complaints and the computer training incident at issue. "The causal connection required in the third prong of the plaintiff's prima facie case has a lower threshold than the 'but

for' causation required to ultimately prove retaliation." <u>Marak v. Dallas/Fort Worth Int'l Airport Bd.</u>, No. 3:03-CV-1883-R, 2005 WL 1837940, at *5 (N.D. Tex. Aug. 3, 2005) (citing <u>Sherrod v. American Airlines, Inc.</u>, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998)). Porter's evidence fails to satisfy even this low threshold.

Plaintiff's burden in responding to defendant's motion is to come forward with evidence to support the essential elements of his claim. <u>National Ass'n of Gov't Employees</u>, 40 F.3d at 712 (citing <u>Celotex</u>, 477 U.S. at 321-23). However, he has produced <u>no probative evidence</u> of a "causal link" between his exercise of his right to file E.E.O. complaints and his recall from leave to take computer training. <u>Slaughter-Cooper v. Kelsey Seybold Med. Group P.A.</u>, 379 F.3d 285, 291 (5th Cir. 2004).

Porter's only purported evidence that his recall was causally linked to his prior E.E.O. activity consists of his own conclusory statements that "Thomas was aware of the black list that was put out by Ms. Jeanette Butler[5] against certain employees," including Porter, and that "[t]his was part of the plan from Ms. Jeanette Butler to get rid of what she termed the seasoned employee," meaning Porter. Record Doc. No. 24-7 at pp. 68-70, affidavit of Morsie Porter dated December 10, 2006, at ¶¶ 6, 9. These "conclusory

---

[5]Jeanette Butler "was formerly the Facility Management Service Line Director and has been employed with the VA Medical Center in Houston, TX. . . . Donehoo was the Acting Service Line Director for the dates in question in this complaint." Record Doc. No. 24-7 at p.5, E.E.O. Investigative Report dated January 10, 2007. Donehoo became the Acting Director in June 2006. Record Doc. No. 24-8 at p. 2, Donehoo affidavit at ¶ 2.

allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted). Plaintiff's "subjective belief [that] the incidents were retaliatory, without more, is not sufficient to survive summary judgment." Peace, 2006 WL 3068677, at *2 (citing Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000)).

The undisputed, competent summary judgment evidence establishes that the directive concerning mandatory computer security training came from the Secretary to Doyle, who transmitted it as a mandatory action item to Donehoo. Donehoo in turn told Thomas, the only person in this chain of command who knew of plaintiff's prior E.E.O. activity, that all employees must comply. The undisputed evidence also establishes that none of these decisionmakers, including Thomas, knew that Porter was on Leave Without Pay when Thomas told him that he must complete the training. Thus, Porter fails to show any causal link between his recall from leave and his protected activity.

Accordingly, plaintiff cannot establish a prima facie case of retaliation and defendant is entitled to summary judgment in his favor as a matter of law as to this claim.

D.    Plaintiff Fails to Rebut Defendant's Evidence of Legitimate Reasons

Even if Porter could establish a prima facie case of retaliation, defendant has met its burden to produce competent summary judgment evidence of a legitimate, non-retaliatory reason for recalling plaintiff from his Leave Without Pay and requiring him to attend the computer security training. "The employer's burden is only one of production, not persuasion . . . ." McCoy, 492 F.3d at 557.

When plaintiff's supervisor recalled him, the Secretary had directed that all V.A. employees must expedite and complete their annual computer security training by June 30, 2006. Defendant's evidence shows that all employees who were not currently on duty at the V.A. Medical Center were required to take the training and that Porter was not singled out for recall or for lack of compensation. Both Porter and the female employee in Dallas were recalled while on Leave Without Pay and neither was compensated for time spent in the training. The Secretary therefore has carried his burden of production.

"At this point, any presumption of retaliation drops from the case" and Porter "may still avoid summary judgment if [he] demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination." Septimus v. University of Houston, 399 F.3d 601, 609, 610-11 (5th Cir. 2005). "To carry his burden of showing pretext, [plaintiff]

'must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.'" <u>Harris v. Mississippi Transp. Comm'n</u>, No. 09-60043, 2009 WL 2168913, at *5 (5th Cir. 2009) (quoting <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 220 (5th Cir. 2001)).

I find that, for the same reasons that Porter is unable to establish the causal link necessary for a prima facie case, he has failed to produce any competent summary judgment evidence to rebut the Secretary's legitimate, non-retaliatory reasons for the conduct at issue. Accordingly, defendant is entitled to summary judgment in his favor as a matter of law on plaintiff's retaliation claim.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion to dismiss is granted in part as to all of plaintiff's claims, other than his Title VII retaliation claim, and that these claims are DISMISSED WITH PREJUDICE. **IT IS FURTHER ORDERED** that defendant's motion for summary judgment is GRANTED as to plaintiff's Title VII retaliation claim and that this claim is DISMISSED WITH

PREJUDICE, plaintiff to bear all costs of this proceeding. Judgment will be entered

accordingly.

New Orleans, Louisiana, this _20th_ day of August, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE